Daniel E. Young
**Kirton McConkie**
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Email: dyoung@kmclaw.com
Telephone: 801-328-3600
*Attorney for Prina Enterprises*

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

| | |
|---|---|
| PRINA ENTERPRISES, | **COMPLAINT** |
| Plaintiff, | |
| v. | |
| U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA; | Case No.: 26-01171 |
| Defendants. | |

Plaintiff, Prina Enterprises ("Prina"), complains of Defendants U.S. Customs and Border Protection, Rodney S. Scott, and the United States of America (collectively, "Defendants") and alleges as follows:

**Nature of Case**

1. Beginning in February of 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Prina sources its imports. Prina is responsible for paying these tariffs on its imported goods.

1

2. This Court and the Federal Circuit have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025), which the Supreme Court affirmed in its ruling in *Learning Res., Inc. v. Trump*, No. 24-1287, 2026 WL 477534 (U.S. Feb. 20, 2026).

3. Through this action, Prina asks the Court to hold for it exactly what it and the Federal Circuit already held in *V.O.S. Selections*: that the IEEPA duties imposed by Defendants, and the underlying executive orders that directed them, are unlawful.

4. This separate action is necessary, however, because even if the IEEPA duties and underlying executive orders are held unlawful by the Supreme Court, importers that have paid IEEPA duties, including Prina, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief.

5. This action is necessary because the imposition of tariffs under IEEPA is not protestable. Prina seeks relief from liquidations to ensure that its right to a complete refund is not jeopardized.

6. Accordingly, for itself, Prina seeks (i) a declaration that the IEEPA duties are unlawful; (ii) an injunction preventing Defendants from imposing further duties on it under the executive orders challenged in this lawsuit; and (iii) a full refund from Defendants of all IEEPA duties Prina has already paid to the United States as a result of executive orders relying on IEEPA to impose tariffs as well as those it will continue to pay.

**Parties**

7. Prina is California corporation with its principal place of business in South Jordan, Utah.

8. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

9. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

**Jurisdiction**

11. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i).

12. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

13. Prina has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by Defendants. As a result of the executive orders challenged by this lawsuit, Prina has paid IEEPA duties to the United States and thus has suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those injuries. Prina also faces imminent and irreparable harm because entries for which it paid IEEPA duties are anticipated to liquidate as early as December 15, 2025.

**General Allegations**

*President Trump invokes IEEPA to impose tariffs*

4903-0829-3265.v1

14. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs President Trump claimed that they were justified under IEEPA because of a purported national emergency.[1]

15. President Trump issued additional orders adjusting the duty rate on imports from China.[2]

16. Collectively, these Executive Orders are referred to in this complaint as the "Trafficking Tariff Orders."

17. The Trafficking Tariff Orders imposed additional tariffs of 10% to 25% on top of existing duties for goods from Canada, Mexico, and China.

18. On April 2, 2025, President Trump issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[3] This Order imposed a 10% baseline tariff on nearly all imports to the United Sates and additional "reciprocal" tariffs on 57 countries. These high country-specific tariffs range from 11% to 50%.

19. President Trump issued additional orders adjusting the reciprocal tariffs from time to time.[4]

20. Collectively, all Executive Orders relying on IEEPA to impose reciprocal tariffs are referred to in this complaint as the "Reciprocal Tariff Orders."

---

[1] *See* Executive Orders 14193 (90 Fed. Reg. 9,113) (Feb. 7, 2025), 14194 (90 Fed. Reg. 9,117) (Feb. 7, 2025), and 14195 (90 Fed. Reg. 9,121) (Feb. 7, 2025).
[2] *See* Executive Orders 14200 (90 Fed. Reg. 9,277) (Feb. 11, 2025), 14228 (90 Fed. Reg. 11,463) (Mar. 7, 2025).
[3] Executive Order 14257 (90 Fed. Reg. 15,041) (Apr. 7, 2025).
[4] *See, e.g.*, Executive Orders 14259 (90 Fed. Reg. 15,509) (Apr. 14, 2025), 14266 (90 Fed. Reg. 15,625) (Apr. 15, 2025), 14309 (90 Fed. Reg. 26,419) (June 16, 2025).

21. President Trump directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to Trafficking Tariff Orders and Reciprocal Tariff Orders be entered under new tariff codes.

22. The Trafficking Tariff Orders and Reciprocal Tariff Orders have been declared unlawful by this Court and the Court of Appeals for the Federal Circuit.

*IEEPA does not Authorize Tariffs*

23. The Trafficking Tariff Orders and Reciprocal Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

24. None of these statutes authorizes the President to impose tariffs. Of these, it is IEEPA alone that Defendants are leaning on to impose and collect the IEEPA duties.

25. IEEPA does not authorize what the Trafficking Tariff Orders and Reciprocal Tariff Orders seek to impose.

*Only Congress has the Power to Impose Tariffs*

26. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

27. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises …" U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id.*, cl. 3 ("Commerce Clause").

28. Tariffs fall within the Taxing and Commerce Clauses.

29. To delegate the power to impose tariffs to the President, Congress must provide an intelligible principle to direct and cabin in the President's authority.

4903-0829-3265.v1

*See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L.Ed. 2d 800 (2025).

30. Congress did not provide any intelligible principle directing and limiting the President's authority in IEEPA.

31. Congress must speak clearly if it wishes to assign to an agency decisions of vast economic and political significance. *See West Virginia v. EPA*, 597 U.S. 697, 716 (2022).

32. Tariffs are a matter of vast economic and political significance.

33. When Congress has not clearly spoken, courts are directed to find that matters of vast economic and political significance are beyond the power of the President. *See Biden v. Nebraska*, 600 U.S. 477, 505-06 (2023).

34. Congress has not delegated the power to impose tariffs to the President in IEEPA.

35. As such, the Defendants are not authorized to implement the Trafficking Tariff Orders and Reciprocal Tariff Orders.

*CBP's Implementation of the Unlawful Tariffs*

36. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

37. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

38. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

39. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

40. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

41. CBP has applied HTSUS codes to implement the tariffs set forth in the Trafficking Tariff Orders and Reciprocal Tariff Orders.

*Courts have Declared the IEEPA Duties Unlawful*

42. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

43. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

44. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

45. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

46. The Supreme Court ruled that IEEPA does not authorize the President to impose tariffs. *Learning Res., Inc. v. Trump*, No. 24-1287, 2026 WL 477534 (U.S. Feb. 20, 2026).

*Liquidation*

47. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

48. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

49. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

50. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

51. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law.

CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

52. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

53. This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

54. This Court possesses the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties. *See* Slip Op. 25-154 (December 15, 2025) (citing *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021)).

55. The imposition of the tariffs in the Trafficking Tariff Orders and the Reciprocal Tariff Orders is not protestable because CBP is acting in a ministerial capacity in imposing the duties. *See id.*

*Prina paid IEEPA duties*

56. Prina has paid IEEPA duties imposed by the Trafficking Tariff Orders and Reciprocal Tariff Orders.

57. Plaintiff's imports subject to IEEPA entered the United States under new HTSUS codes from foreign countries.

58. Prina has paid IEEPA duties on a continuous basis.

59. The entries for which Prina has paid IEEPA duties imposed by the Trafficking Tariff Orders and Reciprocal Tariff Orders are as a general matter scheduled to begin to liquidate on or after December 15, 2025.

## Causes of Action

### COUNT I
### The Trafficking Tariff Orders and Reciprocal Tariff Orders are Ultra Vires

60. Prina incorporates paragraphs 1 through 60 as though fully set forth herein.

61. The Court of International Trade in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held that the President exceeded his authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

62. As the *V.O.S. Selections* Court explained, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

63. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA and that reading IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines.

64. The Trafficking Tariff Orders and Reciprocal Tariff Orders are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections*. They purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. For the same reasons set forth in *V.O.S. Selections* and its affirmance by the Federal Circuit, those Trafficking Tariff and Reciprocal Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Prina.

65. Prina respectfully requests that this Court apply its precedent and the binding decision of the Federal Circuit, declare the Trafficking Tariff Orders and Reciprocal Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order a refund of all IEEPA duties collected from Prina, with interest as provided by law.

## COUNT II
## The Trafficking Tariff Orders and Reciprocal Tariff Orders
## are Unconstitutional

66. Prina incorporates paragraphs 1 through 66 as though fully set forth herein.

67. In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the Trafficking Tariff Orders and Reciprocal Tariff Orders must nevertheless be held unlawful because IEEPA in that event would constitute an impermissible delegation of legislative power from Congress to the President.

68. The United States Constitution vests in Congress exclusively the power to "lay and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

69. Under separation-of-powers principles and binding precedent of the U.S. Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power. IEEPA does not do that.

70. Prina therefore seeks a declaration that the Trafficking Tariff Orders and Reciprocal Tariff Orders are unconstitutional as to Prina, enjoin Defendants from enforcing them as to Prina, and order refund of all IEEPA duties collected from Prina, with interest as provided by law.

## COUNT III
## Declaratory Relief, 28 U.S.C. § 2201

71. Prina incorporates paragraphs 1 through 71 as though fully set forth herein.

72. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

73. Prina' claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

74.  Prina is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Trafficking Tariff Orders and Reciprocal Tariff Orders on goods it has imported into the United States.

75.  This Court can exercise its equitable power to enter a declaratory judgment that the Trafficking Tariff Orders and Reciprocal Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Prina.

## Prayer for Relief

Plaintiff respectfully requests that this Court:

a) declare that the President lacks authority under IEEPA to set tariffs;

b) declare that the Trafficking Tariff Orders and Reciprocal Tariff Orders are *ultra vires* and void *ab initio* with respect to Prina;

c) declare that, with respect to Prina, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Trafficking Tariff Orders and Reciprocal Tariff Orders;

d) with respect to Prina, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Trafficking Tariff Orders and Reciprocal Tariff Orders;

e) order the United States to refund to Prina the IEEPA duties collected on those entries, with interest as provided by law; and

f) award Prina its reasonable costs, including attorneys' fees, incurred in bringing this action;

g) grant such further relief as this Court deems proper.

Respectfully submitted February 24, 2026.

/s/ Daniel E. Young
DANIEL E. YOUNG
**KIRTON McCONKIE**
*Attorney for Prina Enterprises*